**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

NANCY C. ARMSTRONG,

                    Debtor.
----------------------------------------------------------------x

Case No. 809-70716-reg

Chapter 13

## AMENDED[1] MEMORANDUM DECISION

       Before the Court is the Debtor's motion to voluntarily dismiss this Chapter 13 petition

pursuant to Section 1307(b) of the Bankruptcy Code.[2]  The Chapter 13 Trustee (the "Trustee")

objects to the Debtor's motion and argues that the Debtor does not have an absolute right to

dismiss her case.  Rather, the Trustee urges this Court to find that in light of the Supreme Court's

decision in *In re Marrama,* 549 U.S. 365 (2007), the Debtor's right to dismiss is not an absolute

right but is subject to review by the Court for bad faith conduct.  The Trustee argues that the

Debtor acted in bad faith during the course of her bankruptcy case by attempting to sell her real

property during the pendency of the case without notifying the Trustee or requesting his consent.

       In support of her right to voluntarily dismiss this Chapter 13 case, the Debtor relies upon

---

[1]    This Amended Memorandum Decision amends the Court's Memorandum Decision issued on July 13, 2009 to correct typographical errors on pages 2, 9 and 10.  Nothing in this Amended Memorandum Decision changes the Court's prior substantive rulings.

[2]    The Chapter 13 Trustee had previously filed his own motion to dismiss this case due to the Debtor's failure to provide him with certain documentation required by the federal rules and the local rules of this Court.  However, at a hearing on the motion to dismiss, the Trustee withdrew his motion to dismiss and objected to the Debtor's voluntary dismissal on the grounds that the Debtor acted in bad faith during the course of the bankruptcy case.  Although the Trustee has not explicitly sought to convert this case to chapter 7, it is implied by his position.  Moreover, this Court retains the right to seek to convert this case to chapter 7 *sua sponte* upon notice and a hearing and upon a finding of bad faith.

the decision of the Second Circuit in *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d Cir. 1999), which held that a Chapter 13 debtor has an absolute right to dismiss her case.  The Trustee argues that in the *Marrama* decision the Supreme Court has effectively overruled *Barbieri* by holding that a chapter 13 debtor's bad faith conduct during the course of the bankruptcy case precludes the debtor's voluntary dismissal as of right.

For the reasons that follow, this Court finds in light of *Marrama* and recent amendments to section 1307 of the Bankruptcy Code, the Second Circuit's decision in *Barbieri* has been abrogated and a debtor does not have an absolute right to dismiss a chapter 13 case when there is a finding by the Court of bad faith conduct by the debtor during the bankruptcy case.  Section 1307 should not be used as an "escape hatch" to provide a debtor with immunity from his conduct and avoid the consequences of section 1307(c) and the requirement that all debtors must play by the rules.

### *Background*

The Debtor, Nancy C. Armstrong, filed a Chapter 13 petition on February 6, 2009.  She is represented in the case by Ronald D. Weiss, Esq.  The Debtor's petition lists an ownership interest in real property in Brookville, N.Y. (the "Property").  This is her residence which she owns as tenants by the entirety with her husband, Duncan Armstrong.  The Debtor scheduled the Property with a value of $1.8 million, encumbered by a $905,800 first mortgage, plus $15,500 in county and village real property taxes.  Other than these secured creditors, the Debtor's only other scheduled creditor is the Internal Revenue Service ("IRS") with a priority claim for $23,000 arising from capital gains taxes assessed in 2002.

On February 9, 2009, the Debtor filed a proposed Chapter 13 plan which required monthly payments of approximately $4,000. The proposed plan would pay off the IRS priority claim in full as well as $174,000 in pre-petition arrears to the first mortgagee. According to the Debtor's petition, her monthly mortgage payment, to be made outside the plan, is approximately $8,000. Therefore, it appears that during the Chapter 13 case, the Debtor's monthly obligations would equal at least $12,000.

The Debtor appeared at the meeting of creditors on March 16, 2009 and was examined by the Trustee. On March 31, 2009, the Trustee filed a motion to dismiss the case as a result of the Debtor's failure to provide the Trustee with certain documentation required and/or requested by the Trustee pursuant to the Bankruptcy Code and Rules and the local rules of this Court. *See* 11 U.S.C. §521; E.D.N.Y. LBR 2003-1. A hearing on the Trustee's motion was scheduled for April 16, 2009. The Debtor did not oppose the Trustee's motion, but rather filed her own motion to voluntarily dismiss her case.

At the April 16th hearing, the Trustee withdrew his motion to dismiss and argued that the case should not be dismissed because of facts which he had recently learned pointing to the Debtor's alleged bad faith conduct during the case. According to the Trustee, he learned through a third party that the Debtor had entered into a post-petition contract to sell the Property for $1.5 million without seeking the permission of the Trustee or the authority of the Court. At the hearing, the Court directed the parties to brief the issue of whether a debtor has an absolute right to dismiss a Chapter 13 case, where bad faith is alleged, in light of the recent Supreme Court case of *In re Marrama,* 549 U.S. 365 (2007).

In his memorandum of law in opposition to the Debtor's motion to voluntarily dismiss,

the Trustee argues that the Debtor's right to dismiss her case under section 1307(b) is subject to review for bad faith. He argues that *Barbieri*, which is the current law in this Circuit, has effectively been abrogated by the Supreme Court's reasoning in *Marrama*. In *Marrama* the Supreme Court clearly held that a debtor's right to convert from chapter 7 to chapter 13 is not an absolute right, but is subject to review for bad faith. The Trustee argues that despite the Court being presented with a case under section 706, the reasoning of the Supreme Court in *Marrama* is applicable to the instant case. The Trustee cites to the Ninth Circuit Court of Appeals decision in *In re Rosson*, 545 F.3d 764 (9th Cir. 2008), which held that "after *[Marrama]* a debtor's right to voluntarily dismiss a Chapter 13 case under §1307(b) is not absolute, but is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process." *Rosson*, 545 F.3d at 767. The Trustee also cites to other post-*Marrama* case law which extend *Marrama* to voluntary dismissals under section 1307(b). *See In re Chabot*, No. 08-61317, 2009 WL 981046 at *13 (Bankr. D. Mont. Apr. 13, 2009); *In re Letterese*, 397 B.R. 507 (Bankr. S.D. Fla. 2008); *In re Williamson*, No. 608CV097, 2009 WL 562238 (S.D. Gal. Mar. 4, 2009) (applying *Marrama* to chapter 12 voluntary dismissals).

The Debtor filed a memorandum of law in support of her absolute right to voluntarily dismiss her case. Attorney Roy Lester, of Lester & Associates, P.C., filed an *amicus curiae* brief in support of the Debtor's position. The Debtor argues that the Second Circuit's holding in *Barbieri* is still good law in the Second Circuit and a chapter 13 debtor has an absolute right to dismiss her case. *Marrama*, the Debtor argues, should be limited to its facts and applied only to chapter 7 conversions under section 706(a). The Debtor argues that the specific language of section 1307(b) which states that the court "shall" dismiss the case "at any time" on request of

the debtor is sufficient to distinguish this statute from section 706 which is the subject of the Supreme Court's decision in *Marrama*.  This language, the Debtor argues, leaves no discretion with the bankruptcy court, but rather gives a chapter 13 debtor the absolute right to dismiss. This statutory construction, the Debtor argues, is consistent with Congressional intent that chapter 13 be a purely voluntary form of relief under the Bankruptcy Code.  In support of her position, the Debtor cites post-*Marrama* cases which hold that *Marrama* has no impact on a chapter 13 debtor's right to voluntarily dismiss.  *See In re Polly*, 392 B.R. 236 (Bankr. N.D. Tex. 2008); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *4 n.3 (Bankr. N.D. W.Va. Dec. 18, 2007); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 n.1 (Bankr. M.D. Fla. May 16, 2007). Finally, the Debtor also points out that there is no pending motion to convert to Chapter 7 and this Court cannot force her to stay in chapter 13 involuntarily.

In addition, the Debtor argues that she has not acted in bad faith.  According to the Debtor, sometime between February 6, 2009, when she filed the petition, and March 16, 2009, when she appeared at the 341 meeting, she determined that she would not continue with her chapter 13 case because her combined household projected disposable income would not be enough to support both post-petition mortgage payments and the chapter 13 plan payments. Without the chapter 13 case, the Debtor recognized that she could not keep her home.  It is the Debtor's assertion that she notified her bankruptcy counsel on March 20, 2009 that she did not want to proceed with the case.  Thereafter the Debtor notified her counsel of her decision to market and sell the Property.  Under the mistaken belief that her case had already been dismissed,  the Debtor signed a contract to sell the Property on April 8, 2009.  The Debtor argues that based on these facts, even if this Court does not follow *Barbieri*, the Trustee cannot establish

bad faith sufficient to deny dismissal of the case.

## APPLICABLE STATUTES AND CASE LAW

Section 1307, which governs conversion or dismissal of chapter 13 cases, provides that:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

*(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.*

*(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...*[3]

---

[3] Examples of "cause" included in the statute are:

(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28;
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
(6) material default by the debtor with respect to a term of a confirmed plan;
(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521;
(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or
(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

(d) Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title.

(e) Upon the failure of the debtor to file a tax return under section 1308, on request of a party in interest or the United States trustee and after notice and a hearing, the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate.

(f) The court may not convert a case under this chapter to a case under chapter 7, 11, or 12 of this title if the debtor is a farmer, unless the debtor requests such conversion.

(g) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. §1307 (emphasis added).

In *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d Cir. 1999), the

Second Circuit reversed prior bankruptcy and district court holdings and found that a chapter 13

debtor has an absolute right to dismiss her case as long as the case had not been previously

converted from chapters 7, 11 or 12.  In *Barbieri*, the debtor was the owner of an apartment

building in Manhattan who had entered into a pre-petition contract to sell the property to RAJ

Acquisition ("RAJ").  The debtor filed a chapter 13 bankruptcy petition and sought to repudiate

the sale contract and enter into a new contract with another purchaser for a higher purchase

price.  RAJ objected to the sale.  At the conclusion of the sale hearing, the bankruptcy court

indicated its intention to convert the case to chapter 7.  In response, the debtor sought to

---

11 U.S.C. §1307(c).

voluntarily dismiss her case.  The bankruptcy court denied the debtor's motion to dismiss and converted the case to chapter 7 *sua sponte* citing sections 105(a) and 1307(c).  The District Court affirmed.

On appeal the Second Circuit reversed and found that the plain language of section 1307(b) gives a debtor the absolute right to dismiss.  The Court first relied on a plain reading of subsection (b) to reach its conclusion.  The Court found that the use of the phrase "at any time" and the word "shall" in subsection (b) removed any discretion from the bankruptcy court to deny dismissal other than for the reasons stated directly in the statute, *i.e.*, unless the case had been previously converted.  The mandatory nature of subsection (b), the Court held, is underscored by the fact that subsection (c), relating to motions to dismiss or convert by parties in interest or the United States trustee, uses permissive language, *i.e.*, "the court *may* convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate ... ."

The Second Circuit was also persuaded that it was the intent of Congress for chapter 13 to be a purely voluntary chapter.  *See In re Barbieri*, 199 F.3d at 620 (citing *In re Harper-Elder*, 184 B.R. 403, 408 (Bankr. D.C. 1995)).  It reasoned that any creditor or creditors wishing to keep a debtor in bankruptcy despite a debtor's voluntary chapter 13 dismissal could do so by forcing a debtor into a chapter 7 case as long as that creditor or creditors could satisfy the requirements for filing an involuntary chapter 7 petition under section 303 of the Bankruptcy Code.  The Second Circuit held that to permit a party-in-interest to force a chapter 13 debtor into a chapter 7 proceeding against their will would circumvent the requirements of section 303 related to involuntary filings.

The Second Circuit also found that the District Court's reliance on section 105(a) for authority to deny the debtor's right to voluntarily dismiss was misplaced. The Circuit Court held that although section 105(a) does grant the bankruptcy court certain equitable powers, it does not permit the court to disregard the plain language of section 1307(b) which requires a bankruptcy court to dismiss a case upon the debtor's request. The Court also found that there are other provisions of the Bankruptcy Code which protect the bankruptcy process against abuse, such as Rule 9011(c) which authorizes the imposition of sanctions in appropriate cases; sections 349(b) and 362(c) pursuant to which debtors forfeit the protections of the Bankruptcy Code upon dismissal of the case; section 303 which permits creditors to force an involuntary liquidation under certain circumstances; and 18 U.S.C. §§ 151-157 which provide for criminal prosecution of bankruptcy fraud.[4]

The Eighth Circuit Court of Appeals in *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218 (8th Cir. 1996), came to the opposite conclusion. In *Molitor*, the Circuit Court found that the broad purpose of the Bankruptcy Code as well as principles of statutory construction require a finding

---

[4]

Consistent with *Barbieri*, a variety of other courts around the country have held, pre-*Marrama*, that section 1307(b) gives a debtor the absolute right to dismiss. *See e.g., Zeman v. Dulaney (In re Dulaney)*, 285 B.R. 10 (D. Colo. 2002); *Clearstory & Co. v. Blevins*, 225 B.R. 591 (D. Md. 1998); *In re Gillion*, 36 B.R. 901, 906 (E.D. Ark. 1983) ("[W]hen confronted with a motion to dismiss before there has been a conversion, a Bankruptcy Court has no authority to convert a Chapter 13 even though the Court may believe that it would be in the best interest of creditors to do so."); *In re Neiman*, 257 B.R. 105, 109 (Bankr. S.D. Fla. 2001) (agreeing with *Barbieri*, the court ruled that "[t]he word 'shall' in §1307(b) means the directive is mandatory."); *In re Whitmore*, 225 B.R. 199 (Bankr. D. Idaho 1998); *In re Patton*, 209 B.R. 98 (Bankr. E.D. Tenn. 1997); *In re Harper-Elder*, 184 B.R. 403 (Bankr. D.C. 1995); *In re Sanders*, 100 B.R. 338 (Bankr. S.D. Ohio 1989); *In re Looney*, 90 B.R. 217 (Bankr. W.D. W.Va. 1988); *In re Merritt*, 39 B.R. 462 (Bankr. E.D. Pa. 1984); *In re Benediktsson*, 34 B.R. 349, 350-51 (Bankr. W.D. Wash. 1983) (finding that if a debtor responds to trustee's motion to convert under §1307(c) with a motion to dismiss under §1307(b), the court must rule in favor of the debtor's motion to dismiss); *In re Hearn*, 18 B.R. 605 (Bankr. D. Neb. 1982).

that a chapter 13 case can be converted to chapter 7 upon a showing of fraud even though the debtor has requested a voluntary dismissal. In *Molitor*, the debtor filed multiple chapter 13 petitions for the alleged purpose of, among other things, staying efforts to evict him from his residence. The owners of the real property sought relief from stay and, alternatively sought to dismiss or convert the case to chapter 7 alleging that the debtor fraudulently failed to schedule his income tax debts over $100,000 which would put the debtor over the debt limits for chapter 13. *See* 11 U.S.C. § 109(e). Prior to an adjourned hearing on the motion, the debtor filed a voluntary dismissal of his chapter 13 case. Noting the debtor's multiple filings, and allegations of bad faith and improper schedules, the bankruptcy court converted the case to chapter 7 and denied the debtor's motion to dismiss. The District Court and the Eighth Circuit Court of Appeals affirmed.

In its decision, the Eighth Circuit found it noteworthy that the debtor in that case offered no defense to the allegations of bad faith. Instead the debtor used section 1307(b) as an "escape hatch" through which to exit bankruptcy with impunity. The Court found that if it were to permit a debtor to thus exit bankruptcy, it would render section 1307(c) motions to convert meaningless and "open up the bankruptcy courts to a myriad of potential abuses." *In re Molitor*, 76 F.3d at 218. This holding is consistent with various other lower court decisions which find that the bankruptcy court has the inherent power to prevent abuses of the bankruptcy process. *See, e.g., Gaudet v. Kirshenbaum Inv. Co., Inc. (In re Gaudet)*, 132 B.R. 670, 674 (D. R.I. 1991) ("The Bankruptcy Court need not allow itself to be used 'as a legal playground or revolving door, [for] filing and dismissing bankruptcy cases at will so as to delay, frustrate and harass legitimate creditor interests.' . . . Section 105 of the Bankruptcy Code confers broad power on

the Bankruptcy Court to deal with such abuses.") (citations omitted).

Other courts have focused on the interplay of subsections (b) and (c) of section 1307 to reach the conclusion that a debtor does not have an absolute right to dismiss under section 1307(b).  Section 1307(b) states that the court "shall" dismiss the case if the debtor files such a request "at any time."  The language of section 1307(c) is not so mandatory.  Subsection (c) provides that, except as provided in subsection (e)[5], on request of a party in interest the court "may" convert a case to chapter 7 or dismiss.  The Second Circuit in *Barbieri* found that subsection (b) trumps subsection (c) and a bankruptcy court has no discretion to grant a conversion under subsection (c) if a debtor seeks to voluntarily dismiss under subsection (b). Courts which hold otherwise have found that to allow a debtor the right to dismiss under section 1307(b) at any time under any circumstance would effectively nullify the involuntary conversion provisions of section 1307(c).  *See In re Howard*, 179 B.R. 7, 10 (Bankr. D.N.H. 1995) (citing cases).  One court summarized the reasoning:

> Reading subsections (b) and (c) *in pari materia* leads one to the conclusion that Congress could not have intended to give a debtor an absolute right to obtain dismissal of a Chapter 13 case. Such a right would give the debtor unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested.  For all practical purposes, that would render subsection (c) a nullity, an intent that ought not to be attributed to Congress. Consequently, this Court holds that the conversion provision contained in § 1307(c) operates as a limitation on the debtor's right to obtain voluntary dismissal under § 1307(b).

---

[5] Subsection (e) provides that if a debtor fails to file a tax return under section 1308, the court "shall" dismiss the case or convert it to chapter 7, whichever is in the best interest of the creditors and the estate.  11 U.S.C. § 1307(e).  The significance of the use of the word "shall" in subsection (e) will be discussed later in this Memorandum Decision.

*In re Gaudet*, 132 B.R. at 676.[6]

Both *Barbieri* and *Molitor* were decided prior to the Supreme Court's decision in *In re Marrama,* 549 U.S. 365 (2007).  In *Marrama*, the Supreme Court held that, under section 706(a), a debtor does not have an absolute right to convert from chapter 7 to chapter 13.  Rather, the right to convert is limited by section 706(d) of the Bankruptcy Code which states that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."  In so holding, the Court held that a debtor forfeits his right to proceed under chapter 13 where he has acted in bad faith.

In *Marrama,* the debtor filed inaccurate chapter 7 schedules and statements which omitted information regarding the true value of an asset of the estate the debtor had transferred to a trust for which he was the sole beneficiary within one year of the filing date.  The debtor admitted that he made the transfer to protect the property from creditors.  The debtor sought to convert his chapter 7 case to chapter 13 after the chapter 7 trustee indicated his intention to administer the concealed asset.  The chapter 7 trustee and the principal creditor in the case opposed the motion on the basis that the request to convert was made in bad faith and would

---

[6] In addition to *Molitor*, *Gaudet*, and *Howard*, there are a number of other written opinions which hold that the right to dismiss under section 1307(b) is not absolute.  *See, e.g., In re Cobb*, No. 99-3193, 2000 WL 17840 at *3 (E.D. La. Jan. 11, 2000) (concluding that the right to voluntary dismissal is not absolute when there is a pending motion to convert under section 1307(c) on the basis of fraud); *In re Johnson*, 228 B.R. 663 (Bankr. N.D. Ill. 1999) ("To say Congress intended that a debtor could thwart a creditor's opportunity even to present his proofs [for conversion] by filing a motion to dismiss…defies reason."). *Cf. Foster v. North Texas Prod. Credit Ass'n. (In re Foster)*, 121 B.R. 961 (N.D. Tex. 1990) (finding chapter 12 debtor, under identical statutory language, does not have an absolute right to dismiss where debtors abused the bankruptcy process through fraudulent conduct), *aff'd without opinion*, 945 F.2d 400 (5th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992).

constitute an abuse of the bankruptcy process.  The bankruptcy court denied the debtor's motion

to convert.  The Supreme Court affirmed concluding that the debtor's bad faith conduct during

the chapter 7 case justified denial of the debtor's motion to convert.  The Court held that a debtor

who acts in bad faith is not eligible for chapter 13 relief, and conversion to chapter 13 is

inappropriate where a debtor is ineligible for relief under that chapter.

In reaching its conclusions, the Supreme Court examined the legislative history as well as

the content of sections 105(a), 109(e), 706 and, most importantly, 1307(c).  The Court held that a

debtor does not have an absolute right to convert his case under section 706(a) despite legislative

history which states that "Subsection (a) of this section gives the debtor the one-time *absolute*

*right* of conversion of the liquidation case to a reorganization or individual repayment plan

case."  *In re Marrama*, 549 U.S. at 371 (citing  S.Rep. No. 95-989, p. 94 (1978), and H.R.Rep.

No. 95-595, p. 380 (1977)) (emphasis added).  Reading the legislative history in the context of

the whole statute, the Court found the reference to a debtor's "absolute right" in the legislative

history to be "equivocal."  The Court found that despite the legislative history, the statute itself

tells us that the right is not "absolute" because the right to convert under section 706(a) is limited

where the case has been previously converted, and it is also limited by section 706(d) which

states that the debtor must be eligible for relief under the chapter to which he seeks to convert.

The Supreme Court found that the language of section 706(a), when read together with

section 706(d) of the Bankruptcy Code, limits a debtor's right to convert to a chapter for which

the debtor qualifies to be a debtor.  Section 706(a) provides: "The debtor may convert a case

under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not

been converted under section 1112, 1208, or 1307 of this title.  Any waiver of the right to

convert a case under this subsection is unenforceable."  Section 706(d) provides:

"Notwithstanding any other provision of this section, a case may not be converted to a case

under another chapter of this title unless the debtor may be a debtor under such chapter."  As a

result, the Court held, the debtor had to meet the eligibility requirements for a chapter 13 debtor

under section 109(e) of the Bankruptcy Code.  *In re Marrama,* 549 U.S. at 372.  The Court

looked to section 1307(c) of the Bankruptcy Code to determine whether the debtor qualified to

become a debtor under chapter 13.  According to the Court's reasoning, if the debtor's proposed

chapter 13 case would be subject to dismissal or conversion "for cause" because of bad faith

conduct under section 1307(c) then the debtor could not qualify to be a debtor under chapter 13.

The Court reasoned that "[i]n practical effect, a ruling that an individual's Chapter 13 case

should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct,

including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling

that the individual does not qualify as a debtor under Chapter 13.  That individual, in other

words, is not a member of a class of 'honest but unfortunate debtor[s]' that the bankruptcy laws

were enacted to protect."  *In re Marrama,* 549 U.S. at 373 (citing *Grogan v. Garner,* 498 U.S.

279, 278 (1991)).

Significantly, the Supreme Court also found that the bankruptcy court has "broad

authority" under either section 105(a) or its inherent authority to take any action that is

"necessary or appropriate" to prevent an abuse of the bankruptcy process.  Specifically, the

Court stated:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either
> provision) limits the authority of the court to take appropriate action in response
> to fraudulent conduct by the atypical litigant who has demonstrated that he is not
> entitled to the relief available to the typical debtor.  On the contrary, the broad

authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

. . . .

Indeed, even if § 105(a) had not been enacted, the inherent power of every federal court to sanction "abusive litigation practices," *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), might well provide an adequate justification for a prompt, rather than a delayed, ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13.

*In re Marrama*, 549 U.S. at 374-76 (footnotes omitted).

Finally, the Supreme Court in *Marrama* declined to set forth a *per se* standard for "bad faith" conduct sufficient to foreclose chapter 13 relief, but did state that the case must be "extraordinary" and the debtor's conduct "atypical." In a footnote, the Court stated:

We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3); *see In re Love*, 957 F.2d, at 1356 ("Because dismissal is harsh ... the bankruptcy court should be more reluctant to dismiss a petition ... for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)").

*In re Marrama*, 549 U.S. at 375 n.11.

In *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008), the Ninth Circuit Court of Appeals relied on the Supreme Court's decision in *Marrama* to conclude that a chapter 13 debtor does not have an absolute right to dismiss under section 1307(b). The Ninth Circuit's reasoning, in part, involved two prior decisions of the Ninth Circuit Bankruptcy Appellate Panel

– *Croston v. Davis (In re Croston)*, 313 B.R. 447, 550 (9th Cir. B.A.P. 2004), and *Beatty v. Traub (In re Beatty)*, 162 B.R. 853 (9th Cir. B.A.P. 1994). In *Croston*, the BAP held that a debtor's one-time right to convert from chapter 7 to chapter 13 under section 706(a) is absolute. The *Croston* decision relied heavily on section 706(a)'s anti-waiver language, *i.e.*, "Any waiver of the right to convert a case under this subsection is unenforceable," and the fact that section 1307(b) contains the identical language. In interpreting section 706(a), the *Croston* court relied upon its previous decision in *Beatty* which interpreted the anti-waiver language in section 1307(b). In *Beatty*, the BAP had concluded that the anti-waiver language of section 1307(b) gave a debtor the absolute right to dismiss. Therefore, the *Croston* court held that a debtor had the absolute right to convert because section 706(a) contains the identical anti-waiver language. The court stated:

> Since the § 706(a) anti-waiver language ("Any waiver of the right to convert a case under this subsection is unenforceable") is indistinguishable from the parallel language of § 1307(b) ("Any waiver of the right to dismiss under this subsection is unenforceable"), it follows that the analysis of the absolute nature of § 1307(b) applies to the same question under § 706(a).

> Thus, *Beatty* compels us to conclude that the § 706(a) right to convert to chapter 13 is effectively absolute in the same manner as the corollary dismissal right under § 1307(b). Moreover, we continue to think *Beatty* was correctly decided.

*In re Croston*, 313 B.R. at 451.

In *Rosson*, the Ninth Circuit agreed with the *Croston* court that the question of whether a debtor has an absolute right to convert to chapter 13 under section 706(a) is "analytically indistinguishable" from whether a debtor has an absolute right to dismiss under section 1307(b). *See In re Rosson*, 545 F.3d at 772-73 (citing *Croston v. Davis (In re Croston)*, 313 B.R. 447, 550

(9th Cir. B.A.P. 2004), *abrogated on other grounds by In re Marrama*, 549 U.S. 365 (2007)).[7]

Therefore, the Ninth Circuit reasoned, when the Supreme Court in *Marrama* abrogated *Croston,*

it effectively overruled the parallel decision under section 1307(b) in *Beatty.* Specifically, the

*Rosson* court stated:

> There is no doubt that after *Marrama*, *Croston* is no longer good law. *Marrama* expressly cited *Croston* as one of the cases recognizing a debtor's absolute right to convert a Chapter 7 case to Chapter 13-an approach that the Court then rejected. *See id.* at 1108 n. 2, 1111-12. Moreover, although Marrama did not address the exact issue decided in *Beatty*, it is clear that, after *Marrama*, *Beatty* too is no longer good law, insofar as it holds that a Chapter 13 debtor has an absolute right to dismiss under § 1307(b). As noted above, *Croston* was at pains to explain that there was no analytical distinction between the legal issue in that case and the issue in *Beatty*. *See Croston*, 313 B.R. at 451-52. We agree, and accordingly we conclude that the Court's rejection of the "absolute right" theory as to § 706(a) applies equally to § 1307(b). Therefore, in light of *Marrama*, we hold that the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or "to prevent an abuse of process." 11 U.S.C. § 105(a). *See Jacobsen*, 378 B.R. at 811 (reaching same conclusion). *But see In re Polly*, 392 B.R. 236 (Bankr. N.D. Tex.2008) (holding that right to voluntarily dismiss Chapter 13 case is "absolute" (distinguishing *Marrama* )).

*In re Rosson*, 545 F.3d at 773-74 (footnotes omitted).

   Significantly, the *Rosson* court explained that although the wording of section 706(a) is

permissive (*i.e.*, "The debtor *may* convert a case ....") and the wording of section 1307(b) is

---

[7]

The *Rosson* Court found that:

. . . [T]he text of § 706(a) "is indistinguishable from the parallel language of § 1307(b) ... [and] it follows that [ *Beatty's* ] analysis of the absolute nature of § 1307(b) applies to the same question under § 706(a)." *Croston,* 313 B.R. at 451. Thus, in *Croston*, the BAP followed *Beatty* and held that a debtor had an "absolute," one-time right to convert his case from Chapter 7 to Chapter 13, and that this was true notwithstanding a bankruptcy court's concern with "perceived dysfunction" or "bad faith manipulation" of the bankruptcy process. *Id*. at 451-52."

mandatory (*i.e.*, "On request of the debtor at any time ... the court *shall* dismiss a case..."), "the different formulations are not dispositive; the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process.*" In re Rosson*, 545 F.3d at 773 n.12.

As of this writing, there are four other bankruptcy court decisions post-*Marrama* which have held that a debtor's right to dismiss under section 1307(b) is *not* absolute, but none of these decisions explains independently why the reasoning in *Marrama* should be extended to section 1307(b) dismissals. *See In re Chabot*, No. 08-61317, 2009 WL 981046 at *13 (Bankr. D. Mont. Apr. 13, 2009) (following *Rosson* ); *In re Letterese*, 397 B.R. 507 (Bankr. S.D. Fla. 2008) (same); *In re Lane*, No. 06-30803, 2008 WL 4829912 at *1 (Bankr. N.D. Cal. 2008) (same); *In re Jacobsen*, 378 B.R. 805 (Bankr. E.D. Tex. 2007) (following prior holdings in that court that chapter 13 debtors do not have an absolute right to dismiss, but citing *Marrama* for proposition that courts have the power to take actions necessary to prevent abuse of process and sanction abusive litigation practices).

There are almost an equal number of decisions, post-*Marrama*, which find that the holding in *Marrama* has no application to section 1307(b) dismissals and should be limited to motions to convert under section 706(a). *See In re Polly*, 392 B.R. 236, 246-47 (Bankr. N.D. Tex. 2008); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *4 n.3 (Bankr. N.D. W.Va. Dec. 18, 2007); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 n.1 (Bankr. M.D. Fla. May 16, 2007).

## **DISCUSSION**

This Court believes after the Supreme Court's decision in *Marrama*, the Second Circuit's decision in *Barbieri* is no longer good law.  As stated by the Ninth Circuit in *Rosson*, "the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process.*" In re Rosson*, 545 F.3d at 773 n.12.  This Court believes that this broader holding in *Marrama* should be applied to voluntary dismissals under section 1307(b).  Therefore, the Court holds that, in light of *Marrama*, a debtor does not have an absolute right to voluntarily dismiss her case when bad faith is established.

First, the Second Circuit's holding in *Barbieri* relied, in part, on a finding that section 105(a) does not give a bankruptcy court the authority to make any holding that is contrary to the "clear language and meaning" of the Bankruptcy Code and Rules.  In *Marrama*, the Supreme Court took a much more expansive view of section 105(a) and recognized the bankruptcy courts' need to exercise their inherent authority and their authority under section 105(a) to prevent abuse of the bankruptcy process.  The Second Circuit's decision in *Barbieri* removes any discretion from the bankruptcy court to prevent abuse of the bankruptcy process in the chapter 13 context. This Court believes that such a holding is contrary to the holding in *Marrama*.   This Court does not suggest that section 105(a) should be used as authority to create a substantive right where one does not otherwise exist, nor does it suggest that section 105(a) should be used to reach a result which is directly at odds with the Bankruptcy Code.  This Court does believe, however, that the Supreme Court's holding in *Marrama* suggests that section 1307(b) should not necessarily trump section 1307(c) when allegations of bad faith conduct have been made because

such a ruling would remove the ability of this Court to remedy abuses of the chapter 13 process. Rather, under the Supreme Court's holding in *Marrama*, subsections (b) and (c) should be read *in para materia* and bankruptcy courts should retain the ability to grant relief under subsection (c) in appropriate circumstances despite a chapter 13 debtor's wish to exit the bankruptcy forum.

Second, in *Marrama* the Supreme Court read the legislative history of section 706(a) in the context of the whole statute. The Court rejected the argument that a debtor has an "absolute right" to convert from chapter 7 to chapter 13 under section 706(a), despite a Senate Committee Report stating that a debtor has "the one-time absolute right of conversion" under section 706(a). The Court found this legislative report to be "equivocal." The Court found that the statute itself belied a finding that the debtor has an "absolute right" because the right to convert under section 706(a) is necessarily limited by section 706(d) which states that a debtor must qualify to be a debtor under the chapter to which he seeks to convert.

Many courts which have held that a debtor has an absolute right to dismiss a chapter 13 case have relied on a reading of the legislative history underlying chapter 13 stating that chapter 13 is a purely voluntary chapter. For example, one committee report states:

> As under current law, chapter 13 is completely voluntary. This Committee firmly rejected the idea of mandatory or involuntary chapter XIII in the 90th Congress. The thirteenth amendment prohibits involuntary servitude.... On policy grounds, it would be unwise to allow creditors to force a debtor into a repayment plan. An unwilling debtor is less likely to retain his job or to cooperate in the repayment plan, and more often than not, the plan would be preordained to fail. Therefore, the bill prohibits involuntary cases under chapter 13, and forbids the conversion of a case from chapter 7, liquidation, to chapter 13, unless the debtor requests.

*In re Gaudet*, 132 B.R. at 673-74 (citing H.Rep. 595, 95th Cong., 2nd Sess. 120 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6080-81 (footnotes omitted)).

The notion of chapter 13 as the "purely voluntary" chapter of the Bankruptcy Code, in this

Court's view, has been extended far beyond its intended meaning.  This Court agrees that a debtor cannot be placed into chapter 13 involuntarily.  *See* 11 U.S.C. §§ 303(a); 706(c); 1112(d).  It is also true that a debtor may not be compelled to remain in chapter 13 involuntarily.  However, there is no indication in the legislative history to support the notion that a chapter 13 debtor can abuse the bankruptcy process and *not* be held accountable.  A review of the legislative history lends no support for the proposition that this Court should not be permitted to avail itself of the full breadth of the Bankruptcy Code to ensure the integrity of the process.  This includes forcing a bad faith chapter 13 debtor into a chapter 7 without his consent.  This result is consistent with the Supreme Court's decision in *Marrama*, and does not violate the thirteenth amendment's prohibition against involuntary servitude because in a chapter 7 a debtor does not commit post-petition wages to repay creditors.

Third, in *Marrama* the Supreme Court also commented on the anti-waiver provision found in both section 706(a) and 1307(c).  Section 706(a) provides that "Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a).  Significantly, the Supreme Court found that even though a *waiver* of the right to convert is not enforceable for public policy reasons, this does not mean that a debtor could not, through bad faith conduct, *forfeit* the right to convert to another chapter:

> A statutory provision protecting a borrower from waiver is not a shield against forfeiture.  Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.  On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an

opportunity to take action prejudicial to creditors.

*Marrama*, 549 U.S. at 1111-12 (footnotes omitted).

Section 1307(b) contains an anti-waiver provision which is identical to that found in section 706(a). Such anti-waiver provisions are intended to protect the consumer against adhesion contracts and are generally associated with bankruptcy protections that are considered sacrosanct. *See e.g.,* 11 U.S.C. §§522(e) (waiver of exemptions); 524(a) (waiver of discharge). Significantly, the Supreme Court in *Marrama* found that "[a] statutory provision protecting a borrower from waiver is not a shield against forfeiture. Nothing in the text of either §706(a) ***or §1307(c)*** limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id*. (emphasis added). The Court held that the fact that section 706(a) contains an anti-waiver provision which is generally intended to protect otherwise inviolable rights of a debtor does not mean that those rights cannot be forfeited by the "atypical" debtor who engages in fraudulent conduct during the bankruptcy case. By the Court's express reference to section 1307 and by virtue of the fact that section 1307(b) contains identical anti-waiver language, the *Marrama* reasoning can and should lead to the conclusion that a chapter 13 debtor can forfeit his absolute right to dismiss by engaging in fraudulent conduct. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008).

Fourth, the Supreme Court was not persuaded that the language of section 706(a) which allows a debtor to convert "at any time" should lead to the conclusion that the right to convert is absolute. Therefore, to the extent that the Second Circuit relied upon or emphasized the identical language in section 1307(b) to support its conclusion that the right to dismiss under that section

is absolute, that reasoning has been abrogated by *Marrama*.

Fifth, the Second Circuit also reasoned that based on a plain reading of the statute a debtor's right to voluntarily dismissal under subsections (b) necessarily trumps a creditor's right to conversion under subsection (c) because the use of the word "shall" in subsection (b) necessarily trumps the permissive "may" in subsection (c). However, since the *Barbieri* decision was issued in 1999, Congress enacted new section 1307(e) which also uses the word "shall" and is mandatory in nature. Section 1307(e) provides that: "Upon the failure of the debtor to file a tax return under section 1308, on request of a party in interest or the United States trustee and after notice and a hearing, the court *shall* dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate." 11 U.S.C. § 1307(e) (emphasis added). Therefore, Congress has decided that a chapter 13 debtor's failure to file required tax returns *shall* result in either conversion or dismissal of the case upon the bankruptcy court's determining which option is in the best interests of creditors and the estate. Section 1307(b) must now be read in light of new subsection (e). Because both subsections use the word "shall" it is not clear that subsection (b) would, under all circumstances, provide the debtor the absolute right to dismiss. Faced with competing motions to dismiss under section 1307(b) and to convert under section 1307(e), a court could no longer rely on the reasoning of *Barbieri* to find that section 1307(b) necessarily trumps a creditor's right to seek conversion of the case. Indeed, the use of the word "shall" in subsection (e) may be read as further indication of Congress's intent for chapter 13 to provide refuge for the "honest but unfortunate debtor" who abides by the rules of the bankruptcy process.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that the Debtor does not have an absolute right to dismiss her chapter 13 case in light of the allegations of her bad faith conduct during the pendency of this case.  However, the record in this case is not sufficiently developed for this Court to make any finding as to bad faith.  Nor does this Court yet have before it a properly noticed motion to convert to chapter 7 under section 1307(c).  This Memorandum Decision makes no ruling as to what standard of bad faith should be applied under the circumstances, except that it will take guidance from the Supreme Court's decision in *Marrama* to the extent that it provides any guidance.

The Court will *sua sponte* issue an Order to Show Cause why this case should not be converted to chapter 7 based upon the allegations of bad faith which have been placed on the record.  The hearing on the Order to Show Cause will be an evidentiary hearing.


Dated: Central Islip, New York
      July 20, 2009

                                    ***/s/ Robert E. Grossman***
                                    Robert E. Grossman
                                    United States Bankruptcy Judge