**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

NANCY C. ARMSTRONG,

Debtor.
----------------------------------------------------------------x

Case No. 809-70716-reg

Chapter 13

## MEMORANDUM DECISION

Before the Court is the Debtor's motion to voluntarily dismiss this chapter 13 petition pursuant to section 1307(b) of the Bankruptcy Code, and the Court's *sua sponte* order directing the Debtor to show cause why this case should not be converted to chapter 7 under section 1307(c) of the Bankruptcy Code based upon allegations of the Debtor's bad faith conduct during the course of this chapter 13 case raised by the Chapter 13 Trustee ("Trustee"). In a prior decision in this case, this Court held that "in light of [the Supreme Court's decision in *In re Marrama,* 549 U.S. 365 (2007)], and recent amendments to section 1307 of the Bankruptcy Code, the Second Circuit's decision in [*Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d Cir. 1999)] has been abrogated and a debtor does not have an absolute right to dismiss a chapter 13 case when there is a finding by the Court of bad faith conduct by the debtor during the bankruptcy case." *See In re Armstrong*, No. 09-70716, 2009 WL 2132440 (Bankr. E.D.N.Y. July 13, 2009). At the time of that decision, however, the factual record was not sufficiently established to enable this Court to make findings as to the Debtor's alleged bad faith conduct. Nor was there, at the time, a pending motion to convert to chapter 7.

On July 13, 2009, this Court entered an interim order denying the Debtor's motion to voluntarily dismiss her case under section 1307(b) pending the outcome of an evidentiary hearing and ordering the Debtor to show cause why this case should not be converted to chapter

7 under section 1307(c) based upon the Trustee's allegations of her bad faith conduct.

On July 23, 2009, this Court held an evidentiary hearing. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

*Facts*

The Debtor, Nancy C. Armstrong, filed a Chapter 13 petition on February 6, 2009. At the time she filed her petition and up until July 20, 2009, the Debtor was represented by Ronald D. Weiss, Esq. ("Mr. Weiss"). The Debtor's petition lists an ownership interest in real property in Brookville, N.Y. (the "Property"). This is her residence which she owns as tenants by the entirety with her husband, Duncan Armstrong. The Debtor scheduled the Property with a value of $1.8 million, encumbered by a $905,800 first mortgage, plus $15,500 in county and village real property taxes. Other than these secured creditors, the Debtor's only other scheduled creditor is the Internal Revenue Service ("IRS") with a priority claim of $23,000 arising from capital gains taxes assessed in 2002. Schedule I to the Debtor's petition lists total combined household income for the Debtor and her husband equal to $15,750: $3,500 per month attributable to the Debtor's income from the operation of her business, Fox Hill Traditions, Inc., and $12,250 per month attributable to the Debtor's husband's income from the operation of his business, Dunwall Company, Inc. Based upon this income and the Debtor's expenses listed on Schedule J, the Debtor's petition shows that she has almost $4,000 in monthly household disposable income to pay towards a chapter 13 plan.

On February 9, 2009, the Debtor filed a proposed Chapter 13 plan which required monthly payments of approximately $4,000. The proposed plan would pay the IRS priority

claim in full as well as $174,000 in pre-petition arrears to the first mortgagee. According to the Debtor's petition, her monthly mortgage payment, to be made outside the plan, is approximately $8,000. Therefore, it appears that during the Chapter 13 case the Debtor's monthly obligations would equal at least $12,000.

The Debtor appeared at the meeting of creditors with Mr. Weiss on March 16, 2009 ("341 Meeting") and was examined by the Trustee. At the 341 Meeting, the Trustee requested that the Debtor provide him with certain documentation related to her business, such as tax returns, bank statements and operating reports. It is the Debtor's testimony that at the conclusion of the 341 Meeting she told Mr. Weiss that she did not want to proceed with the chapter 13 case because she was not able comply with the Trustee's requests for information related to her business because she had not conducted any business through her company in over one year. The Debtor testified that at that time Mr. Weiss told her to "think about it" and "talk to a member of his staff," "give it time" and "let [the case] ride to an automatic dismissal."[1]

Less than two weeks later, on March 29, 2009, the Debtor entered into a contract to sell her home. Apparently, the Debtor's home is in a desirable area and over the years she has received numerous unsolicited offers to purchase her property. Realizing that she would not be able to save her home from foreclosure, the Debtor contacted one of the interested parties about purchasing the property. The prospective purchasers came to her home on Sunday, March 29, 2009 with a proposed form contract which was signed that day. The Debtor testified that the

---

[1] At the conclusion of his cross-examination of the Debtor, the Trustee asked the Court to conduct an inquiry under Fed. R. Bankr. P. 9011, with respect to Mr. Weiss's conduct. An assistant from the Office of the United States Trustee was present at the hearing and the Court requested that an inquiry be conducted.

following day, her husband called Mr. Weiss's office and informed Mr. Weiss's assistant that they had entered into the sale contract. The Debtor testified that Mr. Weiss's assistant told her husband that they did not need to do anything, to "leave it alone" and let the case "run its course."

On March 31, 2009, the Trustee filed a motion to dismiss the case as a result of the Debtor's failure to provide the Trustee with the documents he requested. A hearing on the Trustee's motion was scheduled for April 16, 2009. The Debtor did not oppose the Trustee's motion, but rather filed her own motion to voluntarily dismiss her case.

At the April 16th hearing, the Trustee withdrew his motion to dismiss and argued that the case should not be dismissed because of the Debtor's bad faith conduct in the case. According to the Trustee, he learned through a third party that the Debtor had entered into a post-petition contract to sell the Property for $1.5 million without seeking the permission of the Trustee or the authority of the Court. The Trustee also argues that the Debtor falsified her income on Schedule I. The Debtor admitted that her income was not correctly reported on Schedule I, but testified that she filled out papers in Mr. Weiss's office with accurate information, but she did not review the petition as it was ultimately filed. The Debtor testified that any error in reporting her income on Schedule I was Mr. Weiss's error, not hers. The Debtor also testified on cross-examination that it was on the advice of Mr. Weiss that she made no post-petition mortgage payments to the secured lender.

The Debtor argues that she has not acted in bad faith. It is her position that she sought the advice of her counsel and relied upon that advice in her actions in the matter. Therefore, she argues that the Trustee cannot establish bad faith sufficient to deny dismissal of the case.

*Discussion*

Section 1307, which governs conversion or dismissal of chapter 13 cases, provides that:

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...[2]

Although not specifically stated in the statute, a debtor's bad faith is considered "cause" to convert or dismiss under section 1307(c). *In re Marrama,* 549 U.S. 365, 373 (2007).

In *In re Marrama,* 549 U.S. 365 (2007), the Supreme Court gave limited guidance as to

---

[2] Examples of "cause" included in the statute are:

(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28;
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
(6) material default by the debtor with respect to a term of a confirmed plan;
(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521;
(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or
(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. §1307(c).

the standard for bad faith which might sustain a motion to dismiss a chapter 13 case under section 1307(c). In *Marrama*, the Court held that, under section 706(a), a debtor does not have an absolute right to convert from chapter 7 to chapter 13. Rather, the right to convert is limited by section 706(d) of the Bankruptcy Code which states that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." In so holding, the Court found that a debtor forfeits his right to proceed under chapter 13 where he has acted in bad faith. The Supreme Court declined to set forth a *per se* standard for "bad faith" conduct sufficient to foreclose chapter 13 relief, but did state that the case must be "extraordinary" and the debtor's conduct "atypical." In a footnote, the Court stated:

> We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3); *see In re Love*, 957 F.2d, at 1356 ("Because dismissal is harsh ... the bankruptcy court should be more reluctant to dismiss a petition ... for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)").

*In re Marrama*, 549 U.S. at 375 n.11.

This Court recently applied the *Marrama* holding in the case of *In re FMO Assocs. II, LLC*, 402 B.R. 546 (Bankr. E.D.N.Y. 2009). In *FMO*, the chapter 7 debtor moved to convert its case to chapter 11. The chapter 7 trustee opposed the motion and argued, among other things, that the debtor's bad faith conduct during the chapter 7 case precluded conversion to chapter 11. This Court applied a "totality of circumstances" test to the bad faith analysis and held that the trustee had failed to establish bad faith so "extraordinary as to warrant a finding that the debtor is

ineligible to be a debtor under Chapter 11." *In re FMO*, 402 B.R. at 552. The Court found,

> [I]t is appropriate to adopt a "totality of circumstances" approach in determining whether the Debtor's conduct rises to the requisite level of bad faith such that the Debtor should be denied the opportunity to convert its case. Under this approach, the Court has the flexibility to consider the specific circumstances of each case and to ensure that only the conduct of a debtor which is truly out of the norm constitutes cause to deny conversion to Chapter 11.

*In re FMO Assocs.*, 402 B.R. at 553.

Consistent with *FMO* and several relevant circuit court of appeals decisions, this Court finds that it is appropriate to apply a totality of circumstances test to motions to convert under section 1307(c). *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219 (9th Cir. 1999) (applying totality of circumstances test to conversion under section 1307(c)); *Molitor v. Eidson (In re Eidson)*, 76 F.3d 218 (8th Cir. 1996) (same); *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326 (10th Cir. 1993). The Court also finds that the totality of the circumstances should take into consideration whether the debtor has abused the "provision, purpose or spirit" of the Bankruptcy Code and whether the filing is "fundamentally fair" to creditors. *See In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992). At the core of each of these iterations of the standard to dismiss or convert under section 1307(c), is the notion that the bankruptcy court should have the flexibility to prevent abuses of the bankruptcy process.

In applying the totality of circumstances test, courts have enumerated several factors which should be used to guide a court's analysis. For example, "[ ] whether the debtor has stated his debts and expenses accurately; [ ] whether he has made any fraudulent representation to mislead the bankruptcy court; or [ ] whether he has unfairly manipulated the bankruptcy code," *In re Eidson*, 76 F.3d at 220-21 (citation omitted); "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the

petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors," *In re Love*, 957 F.2d at 1357 (citations omitted); and "[ ] whether the debtor 'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner, . . . ; [ ] 'the debtor's history of filings and dismissals,' . . . ; [ ] whether 'the debtor only intended to defeat state court litigation,' . . . ; and [] whether egregious behavior is present, . . ." *In re Leavitt*, 171 F.3d at 1224 (citations omitted).

      Finally, although the facts of this case have lead to an examination of section 1307(c) only in the context of a potential conversion, a finding of bad faith under section 1307(c) does not necessarily require that the Court convert the case. Section 1307(c) permits the Court to convert or dismiss a chapter 13 case, "whichever is in the best interests of creditors and the estate," upon a finding of "cause." 11 U.S.C. §1307(c). *See Gaudet v. Kirshenbaum Inv. Co. (In re Gaudet*, 132 BR 670, 676 (D. R.I. 1991) (conversion is not an automatic punishment for bad faith; rather the court must consider what is in the best interests of creditors and the estate).

      In the instant case, the Court finds that the Debtor's conduct when reviewed in the totality of the circumstances does not rise to the level of bad faith. The Debtor filed a chapter 13 petition to stay a pending foreclosure sale. To this Court's knowledge this is the Debtor's first bankruptcy filing. There is nothing "atypical" or "extraordinary" about a chapter 13 debtor who files bankruptcy in order to benefit from the section 362 automatic stay to avoid a foreclosure sale of real property. Moreover, the Debtor sought the advice of experienced bankruptcy counsel, filed her petition and schedules, and attended the section 341 meeting with her counsel.

At the conclusion of the section 341 meeting, she advised her counsel that she did not wish to proceed with the case because she was unable to comply with the Trustee's requests for documentation. At that time, and again subsequent to advising her counsel that she had entered into a contract to sell her real property, she was advised by counsel that she need not take any action with respect to the bankruptcy case. Although the Debtor clearly was not authorized under the statute to enter into a post-petition contract to sell her real property, it appears to the Court that she sought and relied upon the advice of her counsel in doing so. As for the inaccuracy of her income reported on Schedule I, the Debtor testified that any error in reporting her income occurred at her counsel's office. The Debtor's testimony on all points was credible and uncontroverted.

Even if the Court were to find under the standard established herein that "cause" existed under section 1307(c), it could not find that conversion of the case to chapter 7 would be in the best interests of creditors and the estate. The Debtor has only two creditors: a secured mortgage lender with a large equity cushion, and the Internal Revenue Service. Neither creditor has appeared in the case. When this case is dismissed, either the Debtor will sell the Property and pay off the mortgage or the lender will continue its foreclosure action and be paid. If either creditor wanted this case to be convert to chapter 7, they had the opportunity to appear and be heard at the July 20th hearing.

*Conclusion*

       For the foregoing reasons, the Debtor's motion to voluntarily dismiss this case under section 1307(b) is granted.

Dated: Central Islip, New York
       August 6, 2009

                                                 */s/ **Robert E. Grossman***
                                                 Robert E. Grossman
                                                 United States Bankruptcy Judge